UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| RUSSELL PATRICK BROWN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:17-CV-29-RLJ-CHS |
| | ) | |
| KEVIN HAMPTON, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

On May 21, 2013, a jury in the Bradley County, Tennessee Criminal Court, convicted Russell Patrick Brown ("Petitioner) of first-degree premeditated murder and aggravated arson [Doc. 1]. For these convictions, Petitioner received respective sentences of life and a concurrent twenty years [*Id.*]. Petitioner now brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of those convictions [*Id.*].

Warden Kevin Hampton ("Warden" or "Respondent") has submitted an answer to the petition, which is supported by copies of the state court record [Docs. 10 and 10-1 through 10-21]. Petitioner has replied to the Warden's answer [Doc. 12], and thus the case is ripe for disposition. Because the Court can decide this case on the record, without receiving new evidence, an evidentiary hearing is not warranted. Rule 8, Rules Governing Section 2254 Cases In The United States District Courts.

For reasons which appear below, the Court will **DENY** and **DISMISS** this petition.

## I.  PROCEDURAL HISTORY

Petitioner filed a direct appeal from his convictions and sentences. On November 20, 2014, the Tennessee Court of Criminal Appeals ("TCCA") affirmed Petitioner's convictions. *State v.*

*Brown*, No. E201302663CCAR3CD, 2014 WL 12649802 (Tenn. Crim. App. Nov. 20, 2014),

*perm. app. denied* (Tenn. 2015). On June 29, 2015, Petitioner filed a pro se petition for post-

conviction relief in the trial court [Doc. 10-12 at 3-69, 72]. The trial court denied relief, the TCCA

affirmed that denial, and the Tennessee Supreme Court ("TSC") denied Petitioner's application

for permission to appeal. *Brown v. State*, No. E201600437CCAR3PC, 2016 WL 6087671, at *1

(Tenn. Crim. App. Oct. 18, 2016), *perm. app. denied* (Tenn. 2016).

Petitioner then brought this timely habeas corpus application in this Court.

## II.    FACTUAL BACKGROUND

The following factual recitation is taken from the TCCA's post-conviction opinion.

> The petitioner's convictions were based on his stabbing a friend to
> death in a motel room and then setting fire to his bed before fleeing.
> The petitioner turned himself in to the police approximately
> eighteen hours later and testified in his own defense at trial, relating
> the following: He and the victim had been friends since childhood,
> with their friendship eventually turning into a sexual relationship,
> based on drugs. The petitioner explained that he did not consider
> himself a homosexual, but he engaged in sexual encounters with the
> victim because he was addicted to cocaine, which the victim
> provided for him.
>
> On New Year's Eve, 2011, the petitioner and the victim purchased
> alcohol, cocaine, and prescription pills and socialized with the
> victim's roommates at his apartment. At about 11:00 p.m., he and
> the victim checked into a motel, where they continued to drink and
> use drugs. The petitioner then penetrated the victim anally, and the
> victim performed fellatio on the petitioner.
>
> The petitioner testified that he never allowed the victim to penetrate
> him anally because he was not a homosexual. He said that the victim
> was aware that he was opposed to that type of relationship[.] That
> night, however, he awoke to find the victim penetrating him anally,
> which enraged him. He got the victim off of him, and the two men
> began a physical altercation. When he saw that a pocketknife that
> they had used earlier in the evening to cut their crack cocaine was
> open on the nightstand, he picked it up and stabbed the victim
> nineteen times. He then set fire to the bed, took the victim's car, and
> fled the scene.

On cross-examination, the petitioner claimed that the victim had informed him that he had AIDS after letting the petitioner perform on him, and attempting to have anal intercourse with the petitioner. The petitioner conceded that he was larger than the victim, that the victim was unarmed, that the fight was over when he picked up the knife with the intent to harm the victim, and that he had intentionally set the fire.

The petitioner also presented in his defense a board-certified neurologist, Dr. Louise Ledbetter, who opined that the petitioner was "unable to make good decisions" and "lacked the ability to premeditate" due to his intoxication from the drugs and alcohol he had consumed that night. In rebuttal, the State presented board-certified forensic psychiatrist Dr. Jerry Glynn Newman, Jr., who opined that the petitioner had the capacity to premeditate at the time of the murder.

*Brown*, 2016 WL 6087671, at *1.

On this evidence, the jury convicted Petitioner of first-degree premediated murder and aggravated arson.

## III.    DISCUSSION

Petitioner's 35-page § 2254 petition lists four claims for relief: (1) insufficient evidence of premeditation to support his first-degree murder conviction; (2) insufficient evidence to sustain his aggravated assault conviction; (3) the trial court refused to give a self-defense instruction; and (4) counsel gave him ineffective assistance [Doc. 1, Pet. at 5-11, 14-34].  All claims, except for parts of Claim 4, were adjudicated in the state courts.

## A.    Standard for Adjudicated Claims

Adjudicated claims are evaluated under the review standards in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  That statutory provision instructs a court considering a habeas claim to defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently than has the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An "unreasonable application" occurs when a state court decision identifies the governing legal rule in Supreme Court cases but unreasonably applies the principle to the particular facts of the case. *Id*. at 407. A habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411; *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (explaining that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court"); *Harrington v. Richter*, 562 U.S. 86,102 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*, 562 U.S. at 102). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Henley v. Bell,* 487 F.3d 379, 384 (6th Cir. 2007) ("[T]he habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings

4

were correct.") (citing 28 U.S.C. § 2254(e)(1)).

### 1.    Insufficient Evidence (First-Degree Premeditated Murder)

In this claim, Petitioner maintains that there was not sufficient evidence of premeditation, given the circumstances surrounding the killing.  More specifically, Petitioner contends that he and the victim were childhood friends whose relationship had evolved into a sexual one, fueled by the victim providing drugs to Petitioner.  Petitioner points to proof showing that, on the night of the crime, he and the victim used drugs and alcohol, that the victim's abrasions may have resulted from a struggle, that Petitioner anally penetrated the victim on the night of the crime, and that Petitioner, who did not consider himself to be homosexual, never allowed himself penetrated anally by the victim.

Petitioner also points to evidence demonstrating that he awakened to find the victim anally penetrating him, that he got the victim off him, and that an altercation ensued, during which the victim divulged to Petitioner that he (the victim) had contracted Acquired Immune Deficiency Syndrome ("AIDS").  Petitioner recounts that he then grabbed an open knife from the night stand and stabbed the victim.  Petitioner continued stabbing the victim because Petitioner "was really mad that he would violate him like that" because anal penetration of Petitioner "was not part of . . . and had never been part of the relationship" [Doc. 1 at 19].  Petitioner submits that a defense expert's testimony supported that, based on Petitioner's self-report that he had ingested various drugs and alcohol, Petitioner lacked the ability to premediate a homicide [*Id.* at 21].  Even the State's expert testified that a combination of alcohol and drugs could lower one's inhibition and cause difficulty in controlling one's emotion, so asserts Petitioner [*Id.*].

Respondent maintains that Petitioner argued to the TCCA in his direct appeal that he was too intoxicated to premediate the murder [Doc. 11 at 21].  Respondent points out that the TCCA

found the jury was properly instructed on intoxication [*Id.*]. Respondent argues that the TCCA's determination that a rational trier of fact could have found the proof sufficient as to the element of premeditation (along with other elements of a premeditated first-degree murder offense) was not an "objectively unreasonable" application of the Supreme Court precedent [*Id.*]. Respondent thus concludes that Petitioner's claim of insufficient evidence of premeditation should be dismissed [*Id.*].

### a) Law on Insufficient Evidence

The controlling rule in a Supreme Court case for resolving a claim of insufficient evidence is contained in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Gall v. Parker*, 231 F.3d 265, 287-88 (6th Cir. 2000) (observing that *Jackson* is the governing precedent for claims of insufficient evidence), *superseded by statute on other grounds as recognized by Parker v. Matthews*, 132 S. Ct. 2148 (2012). In *Jackson*, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matters which lie within the province of the trier of fact. *Id.* at 319.

A habeas court reviewing an insufficient-evidence claim must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson*, 443 U.S. at 324 n.16). Similarly, under AEDPA, deference is also owed to the state court's consideration of the trier-of-fact's verdict. *Cavazos*, 565 U.S. at 7 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already

deferential review"). Hence, a petitioner "bears a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

### b) Analysis

On direct review, Petitioner presented to the TCCA his claim that the evidence was not sufficient to sustain his first-degree murder conviction. *Brown,* 2014 WL 12649802, at *4. The TCCA began its discussion of the claim by referring to *Jackson* as the rule controlling challenges to the sufficiency of evidence, then turned to the elements of the offense of conviction. *Id.,* 2014 WL 12649802, at *4-5. Citing to Tennessee Code Annotated § 39-13-202(a)(1) (2007), the TCCA stated: "First degree murder is the premeditated and intentional killing of another." *Id.,* 2014 WL 12649802, at *5. The TCCA defined "premeditation" as:

> an act done after the exercise of reflection and judgment. … "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

*Id.,* 2014 WL 12649802, at *5 (quoting Tenn. Code Ann. § 39-13-202(d)).

The TCCA observed that premeditation is a jury question and may be established by circumstances surrounding the killing, based upon such factors as "[t]he use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon, preparations before the killing for concealment of the crime;. . . calmness immediately after the killing, . . .the infliction of multiple wounds[;] the destruction or secretion of evidence at the murder[;] and the defendant's failure to render aid to a victim." *Id.,* 2014 WL 12649802, at *5 (all internal citations omitted). The TCCA explained that a jury was not limited to any specific evidence in determining whether a killing occurred after the

exercise of reflection and judgment. *Id.,* 2014 WL 12649802, at *5.

Summarizing the proof which sustained the first-degree premeditated murder conviction, the TCAA pointed to evidence that established that the victim died as a result of multiple stab wounds; that Petitioner testified that, by the time he picked up the knife, the fight that had ensued between the victim and him had subsided; and that he picked up the knife with the intent to harm the victim. *Id.,* 2014 WL 12649802, at *5. The TCCA also pointed to evidence showing that Petitioner stabbed the victim 19 times, including several times in the victim's neck and chest, and that the victim likely would have survived his wounds (including two neck and chest wounds that would have been fatal within minutes) if he had received medical treatment. *Id.*, 2014 WL 12649802, at *5.

Other circumstances indicative of a state of mind of premeditation, according to the TCCA, were that the victim, based upon his neck and chest wounds, would have been making "gurgling" noises; that, rather than render aid to the victim, Petitioner set the bed on fire and fled the scene in the victim's car; and that Petitioner disposed of the murder weapon and drove to various family members' homes before turning himself in to police. *Id.,* 2014 WL 12649802, at *5. Given proof of Petitioner's procurement of a deadly weapon; his use of the weapon to inflict 19 stab wounds (including several to the victim's neck and chest—both vital areas of the body) on an unarmed victim; his failure to render aid to the victim, despite seeing him bleeding profusely; his destruction of evidence by setting the bed on fire; his flight from the scene; and his disposal of the murder weapon, the TCCA found that such proof was sufficient to support a rational juror's inference that Petitioner acted with premeditation in committing the killing. *Id.,* 2014 WL 12649802, at *6.

The TCCA, while acknowledging that Petitioner asserted that his voluntary intoxication rendered him incapable of premeditation, nonetheless reasoned that the jury heard evidence that

Petitioner was under the influence of various drugs and alcohol at the time of the killing and evidence in the form of conflicting testimony from two experts about the effects of those drugs and whether Petitioner had the capability to premeditate at the time of the killing. *Id.,* 2014 WL 12649802, at *6. Observing that the jury was properly instructed on intoxication and specifically told of the relevance of intoxication on a defendant's culpable mental state, the TCCA held that the jury, by its verdict, had determined that Petitioner acted intentionally and with premeditation when he stabbed the victim and that his voluntary intoxication did not negate that intent. *Id.,* 2014 WL 12649802, at *6. The TCCA rejected Petitioner's claim, finding that he was not entitled to relief. *Id.,* 2014 WL 12649802, at *6.

Petitioner has presented nothing to show that the TCCA unreasonably determined that the evidence presented to the jury was sufficient to sustain his first-degree premeditated murder conviction.[1] When there is conflicting evidence regarding an issue, a jury's choice between such evidence furnishes no basis for habeas corpus relief. *Cavazos*, 565 U.S. at 6 ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'") (quoting *Jackson,* 443 U.S. at 326). Petitioner presented evidence to show intoxication; the State presented contrary evidence; and the jury chose to accept the State's version of events.

Given the above proof, the Court finds that TCCA's application of *Jackson* was not unreasonable and that its resulting decision was not based on an unreasonable factual determination. No writ will issue with respect to this claim.

---

[1] Indeed, during Petitioner's post-conviction appeal, the TCCA referred to the post-conviction court's characterization of the wealth of evidence against Petitioner as a "mountain of proof pointing to the [p]etitioner's guilt." *Brown,* 2017 WL 6087671 at *5 (alteration in original).

## 2.      Insufficient Evidence (Aggravated Arson)

Petitioner maintains, in his second claim, that there was inadequate evidence sustaining his aggravated arson conviction [Doc. 1 at 23]. Petitioner argues that he did not set the bed afire to destroy evidence of the killing, but instead to eliminate the existence of any trace of his rape [*Id.* at 23-24]. Petitioner asserts that he was acting in self-defense and with a mental state immediately after his rape that is insufficient to meet the mens rea requirement for aggravated arson [*Id.* at 24]. Respondent argues that the jury was properly instructed on voluntary intoxication, that its verdict reflects that it found Petitioner possessed the requisite mens rea beyond a reasonable doubt, and once again, that the state court's determination on this claim must remain undisturbed under the deferential standard of review [Doc. 11 at 23].

When this issue was raised on direct appeal, the TCCA first held that Petitioner had waived the issue by failing to support it in the argument section of his brief. *Brown,* 2014 WL 12649802, at *6. The TCCA then noted that, notwithstanding the waiver, the evidence was sufficient under *Jackson* to sustain his conviction for aggravated arson.

The TCCA cited to Tennessee Code Annotated § 39-14-301(a)(1), which provides that a person commits aggravated arson when he "knowingly damages any structure by means of a fire ... [w]ithout the consent of all persons who have a possessory, proprietary or security interest therein," and "[w]hen one (1) or more persons are present therein[.]" *Id.*, 2014 WL 12649802, at *7. The TCCA explained that there is no requirement that the person or persons present be injured or that the property actually be destroyed to commit aggravated arson and that the knowing mens rea is satisfied where the person is aware of the nature of the conduct or the accompanying circumstances. *Id.*, 2014 WL 12649802, at *7.

The state court recounted that Petitioner had testified that he intentionally set fire to the bed in his motel room after stabbing the victim multiple times; that a fire marshal had testified that there was no evidence that the fire had not been set intentionally; and that, had the fire department not responded, the fire likely would have spread from Petitioner's motel room to the entire building. The TCCA also pointed out that the motel owner testified that he had not given Petitioner permission to set the fire and that other guests were staying at the motel at that time. The TCCA noted that, while Petitioner claimed that he had seen no other guests at the motel that evening, he was aware that the victim was in the room when he set the fire and that an expert had testified that the victim would have survived the stabbing for several minutes and was likely still alive when Petitioner set the fire. Reasoning that, based on this evidence, a rational juror could conclude, beyond a reasonable doubt, that Petitioner was guilty of aggravated arson, the TCCA did not grant relief.

Petitioner has not provided the Court with anything to establish that the TCCA's disposition of his challenge to the sufficiency of evidence to support his aggravated arson conviction was an unreasonable application of *Jackson*. *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) ("*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" (quoting *Jackson*, 443 U.S. at 319)).

Thus, this Court concludes that the TCCA's decision that Petitioner's aggravated arson conviction was sustained by adequate evidence is not an unreasonable application of *Jackson*. Petitioner is due no relief on his second insufficient-evidence claim.

### 3. Self-Defense Jury Instruction

In this claim, Petitioner maintains that the trial court refused to give an instruction on self-defense, although the evidence shows that he was acting to defend himself against the rape and against "getting AIDS—a deadly disease" [Doc. 1 at 26-27]. Petitioner argues that, likewise, the trial court also refused to give a self-defense instruction for the aggravated arson charge, although he supplies no argument to support that claim [*Id.* at 27]. In Petitioner's reply, he argues additionally that he was justified in killing the victim because the victim had breached their understanding of no anal penetration of Petitioner; that Petitioner was fearful that the victim would forcibly complete the rape he had started; and that Petitioner's judgment was impaired by his emotional response to the rape [Doc. 12].

Citing to a Sixth Circuit case,[2] Petitioner maintains that that failure to instruct that a defendant would have been justified in using deadly force to stop a rape is not harmless error and that the TCCA's rejection of his jury-instruction claim was an unreasonable application of the law [Doc. 12, Reply at 8-9]. For the first time in these habeas proceedings, Petitioner claims in his reply that the trial court's error deprived him of the right to present a full defense [*Id.* at 9].[3]

---

[2] Petitioner cited to *United States v. Baker*, 199 F.3d 867 (1999), [Doc. 12 at 9], but he misstated the case name. The correct citation is *Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999). Nevertheless, this case was not decided by the Supreme Court and has no bearing on whether the adjudication of Petitioner's jury-instruction claim was contrary to or an unreasonable application of Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000) (holding that "§ 2254(d)(1) restricts the source of clearly established law to [Supreme Court's] jurisprudence").

[3] A "reply to an answer to a petition for writ of habeas corpus is not the proper pleading for a habeas petitioner to raise additional grounds for relief." *McWilliams v. Klee*, No. 2:11-14896, 2012 WL 4801518, at *2 (E.D. Mich. Oct. 9, 2012) (citing cases); *see also Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it."). Because the "deprived of a full defense" claim is not properly before the Court, it will be disregarded. Even if the claim properly were before the Court, Petitioner did not raise it in his direct appeal brief [Doc. 10-8 at 32-37 (raising his jury-instruction claim on state law grounds generally and not on violation of his

Respondent counters that Petitioner, having failed to establish that he reasonably believed himself subject to imminent harm, was not entitled to the jury instruction and that, therefore, the claim should be denied [Doc. 11 at 27].

In addressing Petitioner's jury-instruction claim, the TCCA first iterated the allegations he offered in support. *Brown*, 2014 WL 12649802, at *7. Petitioner pointed to his own testimony that he had been sexually assaulted by the victim and that the victim had told him that he suffered from AIDS after engaging in sexual conduct with Petitioner as evidence that "fairly raised the issue of self-defense." *Id.*, 2014 WL 12649802, at *7. Petitioner asserted that the trial court thus should have given that instruction. *Id.*, 2014 WL 12649802, at *7.

The TCCA then reviewed the law on self-defense. Under Tennessee law, "a person not engaged in unlawful activity and in a place he has a right to be is justified in using 'force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force.'" *Id.*, 2104 WL 12649802, at *8 (quoting Tenn. Code Ann. § 39-11-611(b)(1)). The person must have "a reasonable belief that there is imminent danger of death or serious bodily injury" and the danger creating this belief must be "real, or honestly believed to be real at the time" and "founded upon objectively reasonable grounds." *Id.,* 2104 WL 12649802, at *8 (all citations omitted). The TCCA pointed out that "a defendant is only entitled to a defense jury instruction where the issue is fairly raised by the evidence" and that a defendant bears the burden of introducing such evidence. *Id.,* 2104 WL 12649802, at *8.

---

right to present a complete defense)]; thus, did not exhaust it; and now has procedurally defaulted it.

The TCCA iterated testimony given at trial that was relevant to the issue. Petitioner testified that, when he awakened to find the victim sexually assaulting him, he easily pushed the victim off of him and ended the assault. *Id.,* 2104 WL 12649802, at *8. Petitioner further testified that the two engaged in a physical fight, but that the fight had ended when he picked up pocket knife with the intent to hurt the victim. *Id.,* 2104 WL 12649802, at *8. An expert testified that Petitioner had disclosed to the expert that he wanted to hurt the victim "because the victim hurt [him]." *Id.*, 2104 WL 12649802, at *8. The testimony, so determined the TCCA, did not suggest that the Defendant reasonably believed he was in danger of imminent death or serious bodily injury when he attacked the victim with the pocket knife. *Id.*, 2014 WL 12649802, at *8.

The TCCA next discussed Petitioner's self-defense theory predicated on the victim's disclosure that he had AIDS after he and Petitioner had engaged in sexual conduct. The TCCA determined that "the mere fact that the victim may have suffered from AIDS does not justify physical aggression out of fear of contracting the disease." *Id.*, 2014 WL 12649802, at *8 (citations omitted). The TCCA reasoned that, based on Petitioner's testimony, the fight between the victim and himself was over by the time he picked up the knife and attacked the victim. *Id.,* 2104 WL 12649802, at *8. The TCCA reasoned that the prevention of possible exposure to AIDS did not motivate Petitioner's knife attack on the victim because Petitioner already had been exposed to that disease. *Id.,* 2104 WL 12649802, at *8. Concluding that the above summarized proof did not raise an issue as to whether Petitioner acted in self-defense, the TCCA found no error in the trial court's refusal to instruct the jury on self-defense. *Id.,* 2104 WL 12649802, at *8. It denied Petitioner relief on his jury-instruction claim. *Id.,* 2104 WL 12649802, at *8.

The resolution of this issue hinged on state law governing whether the evidence fairly raised the issue of self-defense so as to entitle a defendant to a self-defense instruction. The

Supreme Court teaches that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Hence, whether the denial of a jury instruction on self-defense violated state law generally is not a cognizable claim in this habeas court. *See Phillips v. Million*, 374 F.3d 395, 397 (6th Cir. 2004) (explaining that "[s]tate-law trial errors will not warrant habeas relief unless the error rises to the level of depriving the defendant of fundamental fairness in the trial process."). The Court sees no fundamental unfairness in the state court's refusal to instruct Petitioner's jury on the state law of self-defense.

Moreover, Petitioner does not cite to a Supreme Court case that holds that a criminal defendant is constitutionally entitled to a self-defense instruction, and this Court has found no such case. Indeed, there is authority to the contrary. *See Horton v. Warden, Trumbull Corr. Inst.*, 498 F. App'x 515, 523 (6th Cir. 2012) (explaining that there is "no Supreme Court decision unmistakably setting down" the rule "that a criminal defendant has a due process right to a jury instruction on self-defense"); *Phillips*, 374 F.3d at 397 (observing that a petitioner "offered no United States Supreme Court authority suggesting that the [state] courts unreasonably applied clearly established federal law in denying him a jury instruction on self-defense"). The Supreme Court "has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (citing *Wright v. Van Patten*, 552 U.S. 120, 123 (2008) (per curiam) (internal quotation marks omitted)).

Because the Supreme Court has not squarely-established the specific legal rule that the Constitution guarantees a criminal defendant a self-defense instruction, the state court's resolution of Petitioner's claim cannot be contrary to or an unreasonable application of controlling rule in a

Supreme Court case. Accordingly, Petitioner can be granted no relief on his claim.

### 4. Ineffective Assistance

Petitioner claims that counsel gave him ineffective assistance by: 1) failing to spend adequate time meeting and speaking with him about his case; 2) failing to move to suppress Petitioner's confession; 3) coercing Petitioner to testify; 4) suffering from a conflict of interest; 5) failing to attend Petitioner's psychiatric evaluation by the State's expert witness; 6) failing adequately to investigate, prepare and present a self-defense claim at trial; 7) failing to secure exculpatory evidence; and 8) failing to interview defense witnesses to establish the victim's violent propensities [*Id.* at 29-31]. Petitioner maintains, in his last claim of ineffective assistance, that counsel's multiple errors, while perhaps harmless in isolation, "were cumulative in nature" and of such magnitude as to deny him a right to a fair trial [*Id.* at 31-32]. In support of his cumulative-error claim, Petitioner lists a collection of alleged attorney errors, including that counsel failed to (a) tell the jury that the murder weapon belonged to the victim; (b) present evidence to the jury that the knife was lying opened and ready to use near the bed; (c) adequately raise self-defense to support the trial court's issuance of a self-defense instruction; (d) call witnesses to testify regarding the victim's propensity for violence; (e) introduce the victim's past criminal history that would have shown a pattern of violent behavior; (f) call witnesses to testify that to tell the jury that Petitioner and victim spent $106 on liquor on the night of the crime; and (g) tell the jury that Petitioner has consumed over half a bottle of Paul Masson Brandy [*Id.* at 29-32].

The Warden argues, in his answer, that Petitioner has raised eight claims of ineffective assistance (referring to claims 1-8); that Petitioner has procedurally defaulted three of those claims, specifically claims 2, 6 and 7; and that Petitioner is not is not entitled to relief with regard

to the state court decisions rejecting claims 1, 3, 4, 5, and 8 on the merits, given the deferential standards of review set forth in 28 U.S.C. § 2254. The Warden also suggests that Petitioner has not established that counsel's performance was deficient for any error, singly or collectively. The Court first turns to the claims that, purportedly, were procedurally defaulted.

### a) Procedural Defaulted Claims

The Warden asserts that Petitioner failed to offer to the TCCA his claims that that counsel failed to seek to suppress Petitioner's confession (claim 2); to investigate, prepare, and present evidence at trial on a defense of self that would have justified a self-defense instruction (claim 6); and to discover exculpatory evidence, i.e., a second knife that would have revealed that Petitioner had no plan to kill because he would have used his own knife (the second knife) if he had had such a plan (claim 7). Petitioner's failure in this regard, so Respondent maintains, constitutes a procedural default.

### (1) Governing Law

A state prisoner who petitions for habeas corpus relief must first exhaust his available state court remedies by presenting the claims sought to be redressed in a federal habeas court to the state courts. 28 U.S.C. § 2254(b)(1). The exhaustion rule requires total exhaustion of state remedies, *Rose v. Lundy*, 455 U.S. 509 (1982), meaning that a petitioner must have fairly presented each claim for disposition to all levels of appropriate state courts, through one full round of established review procedures. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Petitioner has the burden to establish that he has exhausted his available state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A petitioner commits a procedural default by failing to raise a federal claim through all levels of available state court review, which bars habeas corpus relief unless that petitioner can show cause to excuse his default and prejudice as a

result of the alleged constitutional violation. *See Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991).

**(2)      Analysis**

Respondent maintains that Petitioner's failure to present these specific claims to the TCCA amounts to a procedural default, which precludes federal review. The Court has examined Petitioner's post-conviction appellate brief and it does not contain those particular claims of ineffective assistance [Doc. 10-18 at 14-16]. Petitioner's failure to present his three claims to the TCCA for disposition constitutes a procedural default.

Petitioner does not assert cause and prejudice to excuse his procedural default; indeed, he concedes both that he committed the procedural default and that his procedural default forecloses federal habeas review of the cited claims [Doc. 12 at 1]. The Court agrees and will not review Claims 2, 6, or 7 alleging ineffective assistance of counsel.

**b)      Adjudicated Ineffective Assistance Claims 1, 3, 4, 5 and 8**

**(1)      Applicable Law**

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive

18

the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id.*

In considering the first prong of the *Strickland* test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Thus, it is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 454-455 (quoting *Strickland*, 466 U.S. at 694). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### (2)    Analysis

When Petitioner brought his post-conviction claims of ineffective assistance on appeal, the TCCA initially cited to *Strickland* and applied its two-pronged test for evaluating such claims. *Brown*, 2016 WL 6087671, at 5 ("To establish a claim of ineffective assistance of counsel, the

petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding") (citing *Strickland*, 466 U.S. at 687). Accordingly, the TCCA's decision on Petitioner's ineffective assistance claims was not contrary to the relevant Supreme Court precedent. The question then becomes whether the TCCA unreasonably applied *Strickland* to the facts of his case. With this inquiry in mind, the Court turns now to Petitioner's claims of ineffective assistance.

(A)     <b>Inadequate Amount of Time Meeting with Petitioner</b>

Petitioner alleges, as his first claim of ineffective assistance, that counsel spent inadequate time meeting with him and discussing the case. Petitioner maintains that the five to seven hours counsel consulted with him were too few hours to engage him in a discussion of his prosecution, given the severity of the charges against him, the complexity of the case, and the punishment attached to convictions on those charges.

In reviewing this claimed attorney shortcoming, the TCCA iterated that counsel testified at the post-conviction hearing that he had spoken with Petitioner "at great length . . . about the case." *Brown*, 2016 WL 6087671, at *6. The TCCA pointed out that the post-conviction court accredited the testimony of counsel and co-counsel and resolved any disputes or conflicts in testimony or evidence against Petitioner. *Id.*, 2016 WL 6087671, at *5. The TCCA agreed with the post-conviction court's conclusion that counsel's testimony established that he conducted "a thorough investigation of the facts." *Id.*, 2016 WL 6087671, at *5. This conclusion implicitly amounts to a finding that there was no deficient performance.

Although the TCCA did not make a finding as to prejudice on this particular claim, a "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained

decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Here, the post-conviction court determined that evidence to support a need for further investigation had not been presented at the evidentiary hearing [Doc, 10-12 at 106 (pointing out the absence of "tangible evidence" to show "what further investigation or preparation would have achieved or uncovered"]. Thus, the post-conviction court implicitly determined that Petitioner had not satisfied *Strickland*'s prejudice prong by finding that no proof had been adduced to show what further investigation would have uncovered.

As one court has expressed it, "the brevity of time spent in consultation, without more, does not establish that counsel was ineffective." *Easter v. Estelle*, 609 F.2d 756, 759 (5th Cir. 1980). Moreover, "regardless of the number of times [Petitioner] met with counsel, the fact that he was provided with a sufficient opportunity to discuss his case is all that is constitutionally required." *McGhee v. United States*, No. 1:04-CR-45, 2009 WL 595994, at *9 (E.D. Tenn. Mar. 6, 2009). Nothing suggests that counsel failed properly to prepare the case for trial as a result of spending too little time consulting with Petitioner about the issues in his case. *See United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988) (observing that "'[w]e know of no case establishing a minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel.'" (quoting *United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988))). Indeed, the post-conviction court iterated that Petitioner admitted at the post-conviction hearing that they had met numerous times and substantively prepared for trial "over several hours" [Doc. 10-12 at 106].

Petitioner has offered no evidence in this Court to show a reasonable probability of a different outcome at trial, had counsel spent more than five to seven hours meeting with him and discussing his case. To be sure, Petitioner's "conclusory allegations regarding the time spent in

consultation with his trial counsel do not show that he was prejudiced at trial[.]" *Mealy*, 851 F.2d at 908; *see also Akins v. United States,* No. 1:04-CR-190, 2011 WL 122037, at \*6 (E.D. Tenn. Jan. 14, 2011) (finding that a petitioner failed to show prejudice by failing to allege "what more preparation time would have revealed and how it could have change (sic) the result of the criminal proceedings").

Given the post-conviction court's respective credibility findings as to the testimony by counsel and Petitioner, this Court finds that implicit determinations by both the TCCA and the post-conviction court that there was no prejudicial performance was not an unreasonable application of *Strickland*. Thus, the TCCA's decision on this claim must remain undisturbed.

### (B)     Coerced Petitioner to Testify

Petitioner's second claim of ineffective assistance is that counsel coerced him to testify, although Petitioner did not want to testify and although his testimony severely harmed his case.[4] Counsel testified at the post-conviction hearing that he had numerous discussions with his client about the advantages to be gained from testifying and the disadvantages that could ensue if Petitioner took the stand. *Brown*, 2016 WL 6087671, at 3. Counsel stated that he encouraged Petitioner to testify to present his defenses of self-defense and voluntary intoxication because, in essence, his testimony would provide the only proof of those two defenses. *Id.*, 2016 WL 6087671, at 3. After considering the proof offered at the evidentiary hearing, the post-conviction court denied relief and, as noted, Petitioner appealed.

On appeal, the TCCA iterated that counsel testified at the post-conviction hearing that he had spoken with Petitioner "at great length" and had discussed "whether or not the petitioner

---

[4] Petitioner claimed in his post-conviction appellate brief that, while "he was very adamant about not testifying," counsel "convinced him to do it" and that he "felt he was forced into testifying at the last minute" [Doc. 10-18 at 12, 14].

should testify in his own defense." *Brown*, 2016 WL 6087671, at 6. The TCCA agreed with the post-conviction court's conclusion that counsel's testimony established that he prepared the Petitioner for his direct and cross-examination testimony. While the TCCA did not explicitly address Petitioner's coerced-testimony claim, the post-conviction court rejected the claim, reasoning as follows:

> Petitioner complains that more emphasis should have been placed on the defense of self at his trial. Yet, the only witness that could have asserted such defense was Petitioner himself under the particular facts of this case. Quizzically, Petitioner in the next breath challenges that his testimony was forced and not voluntary. This Court is left to wonder the true nature of Petitioner's complaint beyond his continued service of a life sentence. . . . If Petitioner desired the defense of self, only his testimony would sufficiently raise such a claim to the jury to warrant consideration and argument. To the contrary, if he didn't want to testify, the defense of self would have never been raised, nor heard and considered by the petit jury.

[Doc. 10-12 at 104]. The post-conviction court then ruled against Petitioner based on his lack of credibility and the logical inferences to be drawn from circumstances surrounding the claim of coercion. More specifically, the post-conviction court stated that it "discredits Petitioner's testimony that he was forced to testify against his will given his obvious motivation and bias as exhibited at the post-conviction hearing. Petitioner voluntarily took the stand to propose that the murder was instigated by the deceased." [*Id.*].

"Credibility determinations are factual determinations" and "[a]s such, a decision based on a credibility determination 'will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.'" *Merzbacher v. Shearin*, 706 F.3d 356, 367 (4th Cir. 2013) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)); *see also Cooey v. Anderson*, 988 F. Supp. 1066, 1074–75 (N.D. Ohio 1997) (commenting that § 2254(d)'s deference requirement to a state court's findings applies to factual findings by a

state trial court or an appellate court). Petitioner points to nothing to show that the post-conviction court's factual determination was objectively unreasonable, and this Court must defer to the factual finding.

Indeed, defense of self, according to the TCCA's opinion, was one of two theories formulated to combat the first-degree premeditated murder charge. *Brown*, 2016 WL 6087671, at 2 (observing that counsel testified that the defense's strategy to defeat the premediated murder charge was "to show that the petitioner had acted in self-defense and that he lacked the capacity to premeditate due to his voluntary intoxication"). The sole method of presenting self-defense, as the post-conviction court thoughtfully determined, was through presentation of testimony by Petitioner.[5]

This Court finds that the state court's decision on this ineffective-assistance claim did not ensue from an unreasonable application of *Strickland*. This claim warrants no habeas corpus relief.

## (C)    Conflict of Interest

Petitioner maintains, as his third claim of ineffective assistance, that counsel suffered from a conflict of interest because co-counsel previously had represented the victim. At the post-conviction hearing, counsel testified that Petitioner never mentioned his office's prior representation of the victim and that he was unaware that co-counsel had represented the victim, until Petitioner sought post-conviction relief. *Brown*, 2016 WL 6087671, at *3. Similarly, co-counsel testified that Petitioner never told him that he had represented the victim; that he (co-

---

[5] According to counsel's testimony at the evidentiary hearing, Petitioner had given a statement to law enforcement that he stabbed the victim when he awoke to find the victim sodomizing him [Doc. 10-13 at 33]. Counsel testified that he discussed with Petitioner that his testimony would not be required if that statement had been put into evidence, but that the prosecutor indicated that the statement would not be used unless it was needed in rebuttal [Doc. 10-13 at 33]. Counsel testified that he believed that "to put on proof of the defense of self-defense, [Petitioner] would have to testify" and that he encouraged his client to testify [Doc. 10-13 at 33-34].

counsel) was unaware of that representation until he learned of Petitioner's allegations in the post-conviction petition; and that, at that point, he looked into the matter, *id.*, 2016 WL 6087671, at *3, and determined that in the past he had represented the victim on a charge of the sale and/or delivery of narcotics [Doc. 10-13 at 52].

A criminal accused has a right to conflict-free representation under the Sixth Amendment. *Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest.") (citations omitted); *Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006) (citing *Smith v. Anderson*, 689 F.2d 59, 62-63 (6th Cir. 1982)). An attorney who labors under an "actual conflict of interest" has rendered ineffective assistance of counsel. *Gillard*, 445 F.3d at 890 (citing *Strickland*, 466 U.S. at 692, for its holding that proof of an actual conflict satisfies the ineffectiveness prong, and creates a presumption of prejudice). "An actual conflict ... is a conflict of interest that adversely affects counsel's performance." *Id.* (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n. 5 (2002)).

Yet, "a possibility of conflict is insufficient to establish a violation of [the petitioner's] Sixth Amendment rights, and no violation occurs where the conflict is irrelevant or merely hypothetical." *Harbison v. Bell*, 408 F.3d 823, 836 (6th Cir. 2005) (citing *Moss v. United States*, 323 F.3d 445, 463–64 (6th Cir. 2003)) (alteration added). Where a § 2254 petitioner raises a conflict of interest claim based on successive representation, not on joint or multiple representation, the two-pronged *Strickland* standard applies. *Stewart v. Wolfenbarger*, 468 F.3d 338, 350-51 (6th Cir. 2006); *Whiting v. Burt*, 395 F.3d 602, 619 (6th Cir. 2005); *Lordi v. Ishee*, 384 F.3d 189, 193 (6th Cir. 2004).[6]

---

[6]  Successive representation typically involves "previous unrelated representation of a co-

Under *Strickland*, Petitioner "must establish both that his trial counsel suffered from an actual conflict of interest and that the conflict of interest adversely affected the quality of representation." *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 844 (6th Cir. 2017); *see also Mickens*, 435 U.S. at 174 (holding that where "there is a conflict rooted in counsel's obligations to *former* clients," the petitioner was required "to establish that the conflict of interest adversely affected his counsel's performance") (emphasis in original).

The post-conviction court heard all the evidence, including testimony given by Petitioner, counsel, and co-counsel, and found that Petitioner had failed to establish that co-counsel's representation of the deceased victim in a narcotics case amounted to a conflict of interest [Doc. 10-12 at 103]. The post-conviction court further found that Petitioner had failed to show any prejudice because co-counsel served as second-chair assistant during Petitioner's premeditated murder prosecution (crediting co-counsel's testimony that he "was not substantially involved" in Petitioner's representation) and because the jurors heard substantial proof that the victim used illegal narcotics, including on the date of his death [Doc. 10-12 at 97, 103]. The clear implication from the post-conviction court's latter finding is that the quality of co-counsel's representation was unaffected by any alleged conflict. The post-conviction court concluded that Petitioner had not met his burden of showing an actual conflict of interest and was not entitled to relief.

When the issue was presented on appeal, the TCCA determined that the record supported the post-conviction court's findings and conclusions, pointing to counsel's testimony at the evidentiary hearing that he was unaware of the fact that his office had previously represented the victim in a drug case and to co-counsel's testimony that he similarly was unaware that he had

---

defendant and/or trial witness," whereas joint representation is the simultaneous representation of co-defendants at trial and multiple representation is the representation of co-defendants at severed trials. *Lordi*, 384 F.3d a 193.

represented the victim until he learned of the allegations in the post-conviction petition and reviewed the record. *Brown*, 2016 WL 6087671, at *6. The TCCA declined to grant relief.

Petitioner has not explained here, nor did he explain in the state courts, how co-counsel's previous representation of the victim on unrelated narcotics charges caused him to abandon his duties to Petitioner. Nor did Petitioner identify, either in this Court or the state courts, co-counsel's specific acts or omissions that resulted from counsel's purported divided loyalties to the victim or Petitioner. *See Strickland,* 466 U.S. at 690 (requiring a claim of ineffective assistance to specify the acts or omissions of counsel that resulted unprofessional judgment). Indeed, the only fact Petitioner presented to the state court was that co-counsel represented the victim in a previous narcotics prosecution [Doc. 10-12 at 16]. But that fact, as the post-conviction court noted, in and of itself, does not demonstrate that a conflict of interest arose [*Id.*]. Without evidence "that a conflict existed or that any decision was influenced," the existence of an actual conflict is pure speculation. *Lordi*, 384 F.3d at 193; *see also Jalowiec,* 657 F.3d at 315 (observing that "typical successive representation [does] not pose an actual conflict of interest").

The state courts did not unreasonably apply *Strickland* in rejecting Petitioner's claim that co-counsel gave ineffective assistance by laboring under a conflict of interest. *See Lordi*, 384 F.3d at 193 (finding no unreasonable application of *Strickland* in "a case of a potential conflict of interest due to a successive representation that never ripened into an actual conflict"). Furthermore, because the Supreme Court has never addressed a conflict of interest that arises from the hybrid kind of successive representation here alleged, the TCCA decision on this claim cannot be seen as an unreasonable application of Supreme Court precedent. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) (explaining that in the absence" of holdings from this Court regarding the [issue] involved here, it cannot be said that the state court "unreasonabl[y] appli[ed] clearly

established Federal law" (quoting 28 U.S.C. § 2254(d)(1))).

Petitioner cannot be granted habeas corpus relief on this instant claim.

### (D)     Did Not Attend Petitioner's Mental Evaluation

Petitioner maintains that counsel failed to attend his psychiatric evaluation and familiarize himself with the affidavit submitted in connection with that evaluation that contained self-incriminating information used against him at trial. Petitioner asserts that, had counsel been present at the examination and studied the affidavit, he could have moved to suppress the affidavit that set forth the incriminating material.[7]

At the post-conviction hearing, counsel explained that he objected initially to the admission of Petitioner's psychiatric evaluation but that he withdrew the objection because the prosecution expert's report contained essentially the same account of the crime Petitioner gave to him and to the defense's mental health expert, i.e., that "substances were used, it was a sexual assault, and he reacted to that sexual assault" [Doc. 10-13 at 27-28]. Counsel also pointed out that the report included Petitioner's claims of self-defense and voluntary intoxication [Doc. 10-13 at 28]. Recall that these were Petitioner's bedrock defenses against the first-degree murder charge. Too, counsel testified that the prosecutor had told him that the State would not use the evaluation at trial unless it became necessary to use it as rebuttal evidence and that this is what happened.

---

[7] Petitioner's claim focuses on an affidavit made in connection with his psychological evaluation. The state court record contains a copy of Petitioner's evaluation that was admitted into evidence at trial as an exhibit to the prosecution expert's rebuttal testimony [Doc. 10-4 at 54-55; Doc. 10-12 at 27-33]. However, the record does not contain an affidavit supporting the evaluation. Petitioner's post-conviction challenge was to statements he made during the court-ordered psychiatric examination, which he characterized as a "confession," but he did not mention a supporting affidavit [Doc. 10-12 at 12-13]. Thus, the Court understands that Petitioner is grounding his ineffective assistance claim on counsel's failure to seek to suppress the evaluation itself based on Petitioner's self-incriminating statements included therein, rather than counsel's failure to seek to suppress an affidavit, the existence of which cannot be verified in the record.

The post-conviction court, as explained before, accredited counsel's testimony over that of Petitioner's, including counsel's explanation of his rationale for withdrawing his objection. The post-conviction court determined that there was no deficient performance, noting that "[i]f Petitioner desired the defense of self, suppression of his self-serving statements would be the last tactic considered" [Doc. 10-12 at 104].

During Petitioner's post-conviction appeal, he raised this issue, claiming that counsel was ineffective "for not preparing him for the examination by the State's expert witness or attending his meeting with the expert." *Brown*, 2016 WL 6087671, at *4. The TCCA noted that counsel testified at the evidentiary hearing in the post-conviction court that he "spoke with and prepared the petitioner for his examination by the expert witnesses" and that the post-conviction court had accredited that testimony. This factual finding necessarily resulted in an implicit determination that counsel did not render a deficient performance with respect to the "no preparation" aspect of Petitioner's ineffective assistance claim.

Neither the TCCA or the post-conviction court specifically ruled on Petitioner's allegation that counsel did not attend his evaluation. However, the post-conviction court determined that suppression of Petitioner's self-serving statements to the expert "is a non-issue as Petitioner himself told the jurors everything of substance subsequently related by State rebuttal experts" [Doc. 10-12 at 105]. This determination implicitly was a finding that counsel's alleged errors purportedly made in connection with Petitioner's psychological evaluation—alleged errors which included Petitioner's claim that counsel did not attend his evaluation—did not prejudice Petitioner. The TCCA did not grant relief on the claim.

Relief will be available only if the state court's application of *Strickland* was unreasonable. Counsel explained that he withdrew his objection because the psychiatric evaluation merely

reiterated statements about the circumstances surrounding the killing to which Petitioner and his expert already had testified. Counsel further explained that the evaluation contained evidence relating to Petitioner's claims of self-defense and voluntary intoxication. Both defense attorneys characterized it as "trial strategy" to allow the evaluation to be submitted to the jury as a trial exhibit [Doc. 10-12 at 103-03].

The Supreme Court has held that a state court does not unreasonably apply *Strickland*'s deficient-performance component by accepting an attorney's explanation "that suppression would serve little purpose in light of [Petitioner]'s other full and admissible confession, to which [two witnesses] could testify." *See Premo v. Moore*, 562 U.S. 115, 123-124 (2011). Counsel made a reasonable tactical decision to withdraw his objection to the psychological evaluation because it contained Petitioner's statements about the killing which mirrored Petitioner's trial testimony and that of his expert and because the evaluation also contained support for Petitioner's claims of self-defense and voluntary intoxication. Strategic decisions such as these are particularly difficult to attack so as to demonstrate deficient performance. *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

Similarly, as the post-conviction court held, there was no prejudice because "Petitioner himself told the jurors everything of substance subsequently related by State rebuttal experts" [Doc. 10-12 at 105]. "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001); *see also Harrington*, 526 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). The unchallenged evaluation contained information about the circumstances of the killing that was

cumulative, and there is no reasonable probability of changing an outcome by objecting to cumulative evidence. *Cf.*, *Wong v. Belmontes*, 558 U.S. 15, 22 (2009) (finding that where "[s]ome of the evidence was merely cumulative of the humanizing evidence [counsel] actually presented; adding it to what was already there would have made little difference . . . [thus a petitioner] cannot establish *Strickland* prejudice); *Boutte v. Biter*, 556 F. App'x 623, 625 (9th Cir. 2014) (concluding that "[t]he absence of evidence that was cumulative of what had already been presented . . . does not undermine our confidence in the outcome") (quotations and citation omitted); *Rhode v. Hall*, 582 F.3d 1273, 1287 (11th Cir. 2009) (finding no prejudice because "[c]ounsel is not required to present cumulative evidence and  "[b]ecause the evidence that [petitioner] faults counsel for failing to present is . . . cumulative"); *Still v. Lockhart*, 915 F.2d 342, 344 (8th Cir. 1990) (counsel's failure to object to the admission of evidence is not prejudicial where the evidence is cumulative of "other evidence that would prove the same proposition").

The TCCA's resolution of the suppression issue, which necessarily resolved the claim that counsel did not attend Petitioner's psychological evaluation, was not an unreasonable application of *Strickland*.

### (E)      Failure to Call Defense Witnesses

Petitioner maintains that counsel failed to interview defense witnesses to establish that he and the victim always carried weapons and that the victim had violent propensities.  In addressing Petitioner's ineffective assistance claims, the TCCA indicated that lead counsel's testimony at the post-conviction hearing established that "he conducted a thorough investigation of the facts, including whether the victim had any previous history of violent acts or violent crimes[.]"  *Brown*, 2016 WL 6087671, at *6.

The TCCA then focused its attention on Petitioner's claim that counsel should have called witnesses to establish the victim's violent propensities. The TCCA observed that Petitioner had not presented those alleged witnesses at the evidentiary hearing on his post-conviction petition. This omission was significant, according to the TCCA, because "to succeed on a claim that counsel did not properly investigate or call favorable witnesses at trial, a petitioner must generally elicit favorable testimony from those witnesses at the evidentiary hearing." *Id.*, 2016 WL 6087671, at *6. This was so, according to the TCCA, because "a post-conviction court may not speculate 'on the question of ... what a witness's testimony might have been if introduced' at trial." *Id.*, 2016 WL 6087671, at *6 (quoting *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990)).

Again, the TCCA emphasized that the post-conviction court accredited the testimony of counsel and co-counsel and resolved any "disputes or conflicts in the proof and testimony" against Petitioner. *Id.*, 2016 WL 6087671, at *5. The post-conviction court, so iterated the TCCA, determined that counsel "formulated a cogent defense trial strategy" and engaged in "a valiant effort" to direct the jury's attention toward facts that were favorable to Petitioner's self-defense and voluntary intoxication defenses and away from "overwhelmingly negative facts" and robust proof of his guilt. *Id.*, 2016 WL 6087671, at *5. Despite the "very difficult circumstances" and the "sordid" facts of the case confronting the defense attorneys, the post-conviction court concluded, according to the TCCA, that their representation had been exceptional. *Id.*, 2016 WL 6087671, at *3, 5. Determining that the record supported the post-conviction court's findings and conclusions, the TCCA found no reason to disagree with the lower state court's decision and affirmed the lower state court's judgment on the ineffective assistance of counsel claims. *Id.*, 2016 WL 6087671 at *6.

To prevail on this claim, Petitioner must show that the TCCA's application of *Strickland* was not reasonable. This showing can be accomplished if Petitioner directs the Court to a Supreme Court case that holds that *Strickland* requires a different resolution on a claim that counsel failed to interview witnesses, where a petitioner does not present the testimony of those witnesses at an evidentiary hearing to establish to what those witnesses would testified at trial. Petitioner has failed to cite to any Supreme Court precedent along these lines and he, thereby, has failed to demonstrate that the TCCA's adjudication of his claim "was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U. S. at 103.

The writ of habeas corpus will not issue with respect to this alleged attorney error.

### (F)    Cumulative Error

Petitioner maintains that counsel's errors, though each error, viewed in isolation, might be harmless, when considered collectively, amount to such prejudice as to have denied him a fair trial.

Petitioner presented the cumulative-error claim to the post-conviction court. That court discussed the issue, noting that, as a prerequisite to the application of the cumulative error doctrine, "actual errors must be found in the proof" [Doc. 10-12 at 107]. The post-conviction court, noting that it found no error of any kind, concluded that the cumulative error doctrine did not apply to Petitioner's case and that his claim failed.

On appeal, the TCCA merely noted that Petitioner was raising a cumulative error claim, but did not further address it. *See Brown*, 2016 WL 6087671, at *4 ("The petitioner argues on appeal that trial counsel made a number of errors in representation, the cumulative effect of which was to deprive him of the effective assistance of counsel and a fair trial."). The TCCA, however, concluded that Petitioner had not met his burden of showing that he was denied the effective

assistance of counsel and affirmed the post-conviction court's denial of his collateral review petition.

Petitioner will be entitled to the writ of habeas corpus if he demonstrates that the state court's adjudication of his cumulative-error claim was contrary to or an unreasonable application of a controlling rule in a Supreme Court case. Petitioner has not made that showing and this Court concludes that he cannot make it. This is so because the Supreme Court has not held that a district court may look to the cumulative effects of errors in deciding whether to grant habeas corpus relief. *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (explaining that "the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) (observing that "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"); *cf.*, *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (assuming, without deciding, that cumulative error could provide basis for § 2254 relief and holding that no relief is warranted if "there are simply no errors to cumulate.").

Because there is no Supreme Court precedent on this issue, the state court's adjudication of Petitioner's cumulative error claim could not have been unreasonable application of the relevant rule in a Supreme Court case. *See Carey*, 549 U.S. at 77. Habeas corpus relief is unavailable for this claim.

Furthermore, the instances of error raised in his § 2254 cumulative-error claim are not the same ones he offered in the state courts. A petitioner must raise a claim under the same legal theories in state courts as he does in federal courts; raising a claim in a different legal context in state courts does not exhaust it for federal habeas corpus purposes. *Wong v. Money,* 142 F.3d 313,

322 (6th Cir. 1998) ("This circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court.").

Because Petitioner did not exhaust those attorney-error claims in state courts and because state remedies are now foreclosed, he has committed a state procedural default and must show cause and prejudice to obtain habeas corpus review. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). No such showing has been made or even offered and Petitioner has committed an unexcused procedural default of his new legal theories in his cumulative-error claim. And if those specific attorney-error claims were exhausted in state courts, it remains that, for the above reasons, Petitioner is not entitled to relief. *See* 28 U.S.C. § 2254(b); *see also Granberry v. Greer*, 481 U.S. 129, 133–34 (1987) (permitting a court to deny a habeas petition (or claim) on the merits, despite a failure to exhaust state remedies).

## IV.   CONCLUSION

Based on the preceding law and analysis, this *pro se* state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V.   CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of a court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). A petitioner whose claims have been dismissed on their merits must show that reasonable jurists would find the assessment of the

constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the procedural basis upon which is based the dismissal of several claims and the law upon which is based the dismissal on the merits of the rest of the claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings nor its assessment of the claims. *Id.* Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**IT IS SO ORDERED.**

ENTER:

_____s/ Leon Jordan_____
United States District Judge